# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| BARRY WARREN, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. _____ |
| | ) JURY DEMAND |
| NISSAN NORTH AMERICA, Inc. | ) |
| Defendant. | ) |

## COMPLAINT

Comes now the Plaintiff, Barry Warren by and through, Jay B. Jackson, Mitchell & Mitchell, Attorneys at law, his attorneys of record and sues the Defendant as follows:

1. The Plaintiff, Barry Warren, is a citizen and resident of Murfreesboro, Rutherford County, Tennessee. He filed a complaint with the EEOC alleging discrimination in employment. The EEOC issued a right to sue letter dated December 9, 2020. He has exhausted his administrative remedies.

2. The Defendant, Nissan North America, Inc. ("Nissan") is a corporation organized pursuant to the laws of the State of California and does business in Williamson County, Tennessee.

3. Mr. Warren became an employee of Nissan on or about September 6,1989.

4. At the time of his termination, Mr. Warren was employed by Nissan as a Senior Manager in Purchasing.

5. Nissan offered an early retirement package in February 2019. Mr. Warren chose to continue with his employment. Almost immediately, because of his age and decision to not

retire, Mr. Warren became subject to a hostile work environment and systematic retaliation for his choice.

6. April 2019, based on increasing workloads, Mr. Warren requested that Nissan allow him the use of David Bradley. Mr. Bradley had a skill set that was needed for issues Mr. Warren was being forced to manage, incremental to his role in Purchasing. Mr. Bradley had accepted early retirement and was exiting the company on or about April 13, 2019.

7. Mr. Warren spoke to his direct supervisor, Director Gergely Baranyi about the request. Mr. Baranyi approved and provided directions for Mr. Warren to proceed. Mr. Warren met with Ms. Cassie Pruitt of Human Resources to consider 2 options. Allowing Mr. Warren to hire Mr. Bradley as a contractor or to extend his separation date to support and train Mr. Warren on what was required in his incremental workload. Ms. Pruitt said the company will no longer allow retirees to return as contractors. The alternative was to extend his separation date. The decision to extend his separation date is made by the respective function, in this case Purchasing. Other functions (e.g., Supply Chain and Manufacturing) had separation dates scheduled later in the year to allow for proper hand-over and training. Mr. Warren's proposal - by no means – was an unprecedented request. The request to extend Mr. Bradley's separation date was rejected by choice of the Purchasing function, led by Vice President Rob Pitt.

8. In June 2019, Purchasing Strategy team concluded a headcount study under the leadership of Director Phillip Street. The findings indicated that Mr. Warren was understaffed, yet no actions were taken by Mr. Pitt or his Senior Director Mr. Ricky Mitchell.

9. In November 2019, Mr. Warren again requested help. This time he requested the use of Dale Pinnekamp. In addition to his Production Purchasing responsibilities, Mr. Warren was now having to manage supplier distress. Mr. Pinnekamp was originally hired in the Nissan

Supplier Restructuring Group due to his subject matter expertise on the subject. He also had the bandwidth to support. His Director, Phillip Street, recognizing Mr. Warren needed help by virtue of his team's headcount study in June did offer support, but with a person (Al Bell) not possessing the skill set to provide relief. Mr. Warren escalated the need to utilize a subject matter expert to Mr. Mitchell and again, Mr. Mitchell made a choice to not support Mr. Warren.

10. In November 2019, Mr. Warren, already stressed and being deprived of adequate resources by Nissan, lost a vital member of his team (Jennifer Menjivar) and Mr. Warren was not permitted to backfill the employee, by choice of Mr. Pitt and Mr. Mitchell.

11. In December 2019, to self-support his issues and provide relief of his Production Purchasing responsibilities, Mr. Warren coordinated a rotation of team members, trading young, inexperienced but talented people for experienced but lesser energetic employees. This would reduce his training and oversight time of the inexperienced Buyers. This rotation package was also rejected by Mr. Mitchell.

12. May 2020, Mr. Pitt, and Mr. Mitchell created an incremental Purchasing position to manage the distress supplier issues which were required of Mr. Warren. Mr. Warren's replacement in his Production Purchasing role was permitted to replace the team member lost in November. Clearly both roles are deemed critical, yet Mr. Pitt and Mr. Mitchell chose not to address the issues while under Mr. Warren's responsibility.

13. The hostile behavior by Nissan to increase workloads and ignoring critical workload issues are not new tactics employed by Nissan to force older employees to retire or take early retirement.

14. Mr. Warren was part of a discussion that rotated a Buyer, John Thompson out of production purchasing to "upgrade" the department. Mr. Warren was present in another meeting,

a few years later, where Mr. Thompson, who was in the age protected class at the time, was rotated back into production purchasing with the intent to make him" uncomfortable enough to retire". The aggressive behavior proved effective and Mr. Thompson retired. Mr. Larry Pavey was the managing Director.

15. This animus behavior is the same with Mr. Warren as it was Mr. Thompson. Nissan set out on a systematic plan to create a hostile work environment designed to force Mr. Warren's retirement because of his age.

16. In February 2020, Nissan North America announced it would once again offer an early retirement package. Mr. Warren was contacted during personal time by Mr. Larry Pavey, who was no longer his Director, and encouraged to accept the retirement packaging. Mr. Pavey's rationale:

- ❖ This was the last year Nissan would offer early retirement.
- ❖ Purchasing is tasked to get to 2014 payroll.
- ❖ Nissan would manage headcount through Tennessee's Right to Work State provision.
- ❖ Mr. Pavey promised Mr. Warren a position with a company he was interviewing with if Mr. Warren accepted the early retirement package.
- ❖ Mr. Warren was told to expect a bad FY2019 performance review.

Mr. Warren reported this threatening call to his direct supervisor and Director Gergely Baranyi, the following morning. Mr. Baranyi immediately escalated the threat to Vice-President Rob Pitt. No action was taken. In fact, the only action taken by Mr. Pitt, was to facilitate circumstances to terminate his employment in retaliation for reporting this threat and other workload issues of potential violations of Tennessee law. Mr. Pavey continues to be employed with Nissan and Mr.

Warren performance review was Above Expectation. Mr. Pavey's intention was to entice him to accept the retirement package with lies of a future job and poor performance review.

17. Similarly, to the hostile tactics, coercion, such as Mr. Pavey promising Mr. Warren a position at another company, is another means to an end. Mr. Pavey promised Mr. Skip Anderson, in 2019 if he accepted early retirement, Mr. Pavey would agree to support his requested separation date. In good faith, Mr. Anderson accepted early retirement, however, after signing the contract, Mr. Anderson's agreed separation date was not honored. Human Resource agents, Dez Frazier and Tracy Jones had to negotiate a new settlement date with Mr. Anderson.

18. Mr. Warren, having comfort in reporting Mr. Pavey's threatening call to his leadership and being financially unprepared to accept early retirement, declined the early retirement offer, again. When Mr. Warren did not retire, Nissan, then set out on a plan to create circumstances to justify a termination to cover up their true animus which was to terminate him because of his age. Mr. Warren was terminated on June 22, 2020 for an event discovered in March 2018.

19. Employers like Nissan have come up with more sophisticated ways to deprive employees of rights and the right to earn a living free of discrimination.

20. The events of Mr. Warren's termination are described in detail below. Mr. Warren as part of his job in purchasing worked with employees in Mexico related to purchasing parts, creating, and processing Purchase Orders. The transaction questioned involved Mexico. The cost control manager, Ms. Viridiana Alverez, in Mexico would provide Mr. Warren's team with an exchange rate for Purchase Order fluctuations. Mr. Warren's team would send the exchange rate calculations to suppliers for their agreement.

21. Once the exchange rate was accepted by the supplier, then his team would issue a request for a Purchasing Order ("PO") based on the supplied and approved exchange rate, by cost control's Ms. Alverez. The process starts and ends with cost control. Mr. Warren's team simply transacts the changes as instructed and relies on the information provided to them from cost control to be accurate.

22. Cost control approved the PO. In this case, nine (9) PO's went through this process and executed.

23. After the PO's in question went through this process, were approved, and issued, the cost control manager, Ms. Alverez, came back to his team and instructed them to change the exchange rate fluctuation from an exchange rate value to a fluctuation value.

24. This was a significant issue for future liabilities. As a result, Mr. Warren contacted his direct supervisor at the time, Director Larry Pavey. Mr. Warren informed him of cost control's request. Mr. Pavy instructed Mr. Warren to not agree to the exchange rate change as requested by Ms. Alverez. So, based upon the instruction from his direct supervisor and an Executive of the company, he relayed to cost control that his team could not support the requested change. Mr. Warren sent an email to Ms. Alverez and advised her of this, escalating the issue to both Mr. Warren and Ms. Alverez's superiors.

25. At the direction of Ms. Alverez, the exchange rate change was transacted by Eduardo Sanchez, a member of Mr. Warren's team. Mr. Warren was not in the Delegation of Authority approval process in the PO modification related to exchange rate fluctuation. Mr. Sanchez followed the direction of his local leadership and the PO modifications were applied.

26. Nissan Purchasing employees are pressured to participate in aggressive accounting methods from the executives of both Purchasing and Finance. Nissan is infamous for

6

Case 3:21-cv-00110   Document 1   Filed 02/10/21   Page 6 of 13 PageID #: 6

a bullying behavior both internally and externally. Falsification of incoming payments are conducted through various techniques and is a cultural expectation. Its intent is to manipulate Key Performance targets related to bonuses.

27. In March 2019, Nissan Purchasing and Finance co-conspired to perform fraud and change the incoming payments from suppliers to count as performance. This means Nissan executed the falsification of incoming payments, which Mr. Warren was falsely terminated for "knowledge of and failing to report an attempt to Finance". Nissan Compliance Department agents were aware that Purchasing and Finance executives, in addition to approximately 30 employees, were involved in this fraud yet no disciplinary actions were administered to these people. This incident was discussed between Mr. Bruce Scoggins of the compliance department and Mr. Warren in the summer of 2019, a year before Mr. Warren's arbitrary termination.

28. Nissan's claim is Mr. Warren should have done more than reporting the 2018 incident to an Executive of the company. He should have called the speak-up hotline. But this reason is not true either. It is not true, among other reasons, because his direct supervisor Director Larry Pavey, when faced with the same information, never said anything or did more. Mr. Pavey was censored or provided a warning whereas his subordinate, Mr. Warren was terminated for acting pursuant to the authority of Mr. Pavey.

29. It is not disputed that Mr. Warren immediately reported the issue from the March 2018 event to his direct supervisor and Director Mr. Larry Pavy.

30. The real reason for his termination is due to his age. Nissan, as set forth above, engaged in a systematic plan to increase his workload, ignored helping him with workload issues, all designed to make him feel uncomfortable and subsequently threatened him, all to force him to retire. Nissan's patience with Mr. Warren had been exhausted and quickly contrived

7

Case 3:21-cv-00110    Document 1    Filed 02/10/21    Page 7 of 13 PageID #: 7

reasons to terminate him that were not true to cover up their real reasons that they wanted to terminate him was due to his age.

31. Mr. Warren reported these issues to the Defendant and worked through the Defendant's Human Resources Department. Once being aware of these circumstances the Defendant did nothing to correct any of the discrimination involved.

32. According to Nissan, Mr. Warren was terminated for alleged cause, but on June 24, 2020 Human Resource agent Dez Frazier changed his termination to retirement because "(Mr. Warren) should not have been terminated based on (his) age and tenure".

33. The termination of Mr. Warren's employment by the Defendant was an adverse employment action. Other adverse employment actions included the refusals to help Mr. Warren with workload issues after he turned down the 2019 early retirement package and again in 2020 with the attempt to force him to retire, a violation of law, with veiled threats and promises of future employment.

34. At the time of his termination and during the course of all the activities described herein, Mr. Warren was at least forty (40) years of age.

## CAUSES OF ACTION

### A.

**VIOLATIONS OF THE FEDERAL AND TENNESSEE AGE DISCRIMINATION IN EMPLOYMENT ACT**

35. Plaintiff incorporates by reference the allegations contained in paragraphs 1-34 as if fully stated herein.

36. The Plaintiff was over the age of forty (40) years of age and therefore protected by the federal and Tennessee laws prohibiting discrimination based on age at the time of the adverse employment actions alleged above.

37. For the reasons set forth above and for other reasons, the actions and behavior and actions of the Defendant subjected the Plaintiff to disparate treatment and adverse employment actions in whole or in part because of his age in violation of the ADEA 29 U.S.C §623(1) and other parts of this law and in violation of the Tennessee Human Rights Act § 4-21-101 et seq. provisions that prohibit age discrimination.

38. The Defendant's violations of these laws were willful and intentional.

39. As a result and proximate result of the violations of the Tennessee Human Rights Act and the ADEA by the Defendant against the Plaintiff, the Plaintiff has suffered damages. These damages include, but are not limited to, compensatory damages, lost wages, attorney fees and all other damages allowed by law.

**B.**
**THE ACTIONS AND BEHAVIORS OF THE DEFENDANT NISSAN CONSTITUTES RETALIATION FOR AGE DISCRMINATION CLAIMS**

40. Plaintiff incorporates by reference all allegations contained in paragraph 1 through 39.

41. The actions of Defendant Nissan by purposely and intentionally failing to take any corrective action to deal with the improper treatment of him related to the workload issues. The actions by Nissan of terminating him after reporting to them that an employee was trying to force him into early retirement due to his age and in failing to address or protect Mr. Warren from the actions of other employees designed to create a hostile work environment due to his age and then his termination for untrue reasons for which Human Resources participated in

constitutes a retaliatory action taken against Mr. Warren for reporting violations of federal and state law. Defendant's attempt to force him to retire, a violation of law, with veiled threats and promises of future employment.

42. Mr. Warren was terminated and discharged by Nissan.

43. As a result and proximate result of the violations of the Tennessee Human Rights Act and the ADEA by the Defendant against the Plaintiff, the Plaintiff has suffered damages. These damages include, but are not limited to, compensatory damages, lost wages, attorney fees and all other damages allowed by law.

## C.

### INTENTIONAL AND RECKLESS INFLICTION OF EMOTIONAL DISTRESS

44. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 43;

45. Based upon the allegations referenced above, the actions of Defendants, constituted extreme and outrageous conduct which was contemplated with the specific intent and desire to cause a severe emotional distress or damage to Plaintiffs. Among other things, the actions by Nissan of terminating him after reporting to them that an employee was trying to force him into early retirement due to his age and in failing to address or protect Mr. Warren from the actions of other employees designed to create a hostile work environment due to his age and then his termination for untrue reasons for which Human Resources participated in constitutes a retaliatory action taken against Mr. Warren for reporting violations of federal and state law. Defendant's attempt to force him to retire, a violation of law, with veiled threats and promises of future employment. These actions among others, were made with conscious disregard for and with knowledge that it would cause severe emotional distress to the Plaintiff. The actions

described above are the extreme and outrageous actions that were an intentional infliction of emotional distress.

46. As a result and proximate result of the intentional infliction of emotional distress described herein, the Plaintiff has suffered serious or severe emotional injury. Damages include, but are not limited to, the severe emotional distress suffered by the Plaintiff as a result of the actions of Defendants, damages for any personal injury received as a result, damages for intentional infliction of emotional distress on the part of Defendants, damages for any and all medical expenses and/or mental pain and suffered, and all other damages allowed by Tennessee law;

### D.

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

47. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 46;

45. The Plaintiff states that the actions of Defendants a the actions by Nissan of terminating him after reporting to them that an employee was trying to force him into early retirement due to his age and in failing to address or protect Mr. Warren from the actions of other employees designed to create a hostile work environment due to his age and then his termination for untrue reasons for which Human Resources participated in constitutes a retaliatory action, taken against Mr. Warren for reporting violations of federal and state law and Defendant's attempt to force him to retire, a violation of law, with veiled threats and promises of future employment, among other reasons, constitute a negligent infliction of severe emotional distress;

46. The Defendant was under a duty of care to the Plaintiff and was aware of but consciously disregarded a substantial and unjustifiable risk that these events could occur from

11

Case 3:21-cv-00110   Document 1   Filed 02/10/21   Page 11 of 13 PageID #: 11

their actions. The Defendant's actions constitute a gross deviation from the standard of care which an ordinary school system would have exercised under the circumstances. The Plaintiff states that the behavior of the Defendant, as described above, constitutes conduct sufficient to establish that the Defendant violated their duty and obligation that they have to the Plaintiff. For the reasons stated herein this Complaint, the Defendant failed to abide by its duty to provide Plaintiff with proper process, handling his matters with due care and exercising due care in handling the matters described herein.

47. As a result and proximate result of the negligent infliction of emotional distress described herein, the Plaintiff has suffered serious or severe emotional injury. Damages include, but are not limited to, the severe emotional distress suffered by the Plaintiff as a result of the actions of Defendants, damages for any personal injury received as a result, damages for negligent infliction of emotional distress on the part of Defendants, damages for any and all medical expenses and/or mental pain and suffered, and all other damages allowed by Tennessee law.

**WHEREFORE** all premises considered, the Plaintiff requests the relief requested above plus the following:

1. That process be issued and the Defendant be required to answer in the time required by law.

2. That the Plaintiff be awarded a judgment against the Defendant for their retaliatory employment action, based on the ADEA and the Tennessee Human Rights Act, taken against him, in the amount of $321,613.35.

3. That the Plaintiff be awarded a judgment against the Defendant for Age Discrimination pursuant to the ADEA and the Tennessee Huma Rights Act by Defendant in this

particular matter for back wages, compensatory damages and all other damages in the amount of $321,613.35.

4. The Plaintiff request that he be awarded a judgment for all reasonable attorney fees incurred from having to file this matter and that the Defendants be required to pay all costs in this action.

5. That Plaintiff be awarded damages for the negligent infliction of emotional distress, intentional and reckless infliction of emotional distress and/or negligence and/or intentional infliction of emotional distress in an amount equal to at least $325,000.00.

6. That Plaintiff is awarded punitive damages against the Defendant in the amount of $2,500,000.00.

7. That Plaintiff be given a jury trial on all issues.

8. That the Plaintiff be awarded any and all further and general relief the Court deems just and proper.

Respectfully submitted,

_____/s/ Jay B. Jackson_____
JAY B. JACKSON, BPR# 016745
Attorney for Plaintiff
MITCHELL & MITCHELL
Attorneys at Law
106 East College Street
P.O. Box 1336
Murfreesboro, TN 37133-1336
(615) 896-4211

### SURETY

I agree to act as surety for the costs in this cause.

_____/s/ Jay B. Jackson_____
Jay B. Jackson